UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
PADUCAH DIVISION

CIVIL ACTION NO. 5:09CV-00182-JHM

HERBERT E. MANNING                                                                                          PLAINTIFF

VS.

SCOTT MAYES, INDIVIDUALLY AND IN
HIS OFFICIAL CAPACITIES                                                                              DEFENDANTS

**MEMORANDUM OPINION AND ORDER**

This matter is before the Court on a motion by Plaintiff, Herbert Manning, *pro se*, for summary judgment [DN 48] and on a motion by Defendant, Scott Mayes, in his individual and official capacities, for summary judgment [DN 49]. Fully briefed, these matters are ripe for decision.

**I. STANDARD OF REVIEW**

Before the Court may grant a motion for summary judgment, it must find that there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The moving party bears the initial burden of specifying the basis for its motion and of identifying that portion of the record which demonstrates the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). Once the moving party satisfies this burden, the non-moving party thereafter must produce specific facts demonstrating a genuine issue of fact for trial. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986).

Although the Court must review the evidence in the light most favorable to the non-moving party, the non-moving party is required to do more than simply show there is some "metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574,

586 (1986). The rule requires the non-moving party to present specific facts showing that a genuine factual issue exists by "citing to particular parts of materials in the record" or by "showing that the materials cited do not establish the absence . . . of a genuine dispute[.]" Fed. R. Civ. P. 56(c)(1). "The mere existence of a scintilla of evidence in support of the [non-moving party's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-moving party]." Anderson, 477 U.S. at 252. It is against this standard that the Court reviews the following facts.

## II. BACKGROUND

Plaintiff, Herbert Manning, owned and operated a business within the city limits of Hopkinsville, Kentucky. Plaintiff rents the building to the public for various social functions. On June 12, 2009, Plaintiff rented the premises for a teenager's birthday party to Glynetta Watkins. The party was scheduled to begin at 8:00 p.m. and end at midnight. Approximately 50 to 150 guest attended the birthday party. The guests moved in and out of the building throughout the evening. Three to four adults chaperoned the party. The Plaintiff was not in the rental area, but was located at or near the premises the entire night.

Defendant, Scott Mayes (hereinafter "Mayes"), a Patrol Sergeant with the Hopkinsville Police Department, was on duty the night of June 12, 2009. While on general patrol, Mayes noticed a number of individuals gathered outside the business and stopped to speak with Plaintiff. Plaintiff testified that the conversation took place around 10:30 p.m. Mayes and the other officers then left the area in question. At approximately 11:00 p.m. to 11:30 p.m., police officers with the Hopkinsville Police Department, including Defendant Mayes, arrived at Plaintiff's business on a disturbance call "with shots fired." (Shannan White Tinsley Affidavit at ¶ 2; see also Curtis Dillard

Aff. at 10 (heard shots fired outside the club).) Upon arriving at the building, officers observed 100 to 150 people in the middle of and blocking Walnut Street immediately in front of the business. (Eddie Schaub Aff. at ¶ 5.) Leandre Watkins, one of the chaperones, testified that "[p]robably everybody that was in the building was outside." (Leandre Watkins Dep. at 11). On arrival, officers observed three fights in progress outside of the building, two on the premises and a third on Walnut Street nearby. (Tinsley Aff. at ¶ 3; L. Watkins Dep. at 9.) Watkins indicated that the teenagers involved in the fight had been at the party.[1] (L. Watkins Dep. at 9.) Tinsley testified that someone indicated that one of the juveniles had a gun, but upon patting down the individual, Tinsley did not find a gun. Officers later located three .25 caliber automatic bullet casings and one live round located on the south end of the business. (Tinsley Aff. at ¶ 4.) Tinsley stated that she conducted a field interview while other officers searched the building. (Id. at ¶ 3.)

Additionally, upon arrival at the scene, officers observed two to three intoxicated underage individuals walking behind the building. (Jonathan Sholar Aff. at ¶ 3; Eddie Schaub Aff. at ¶ 2.) Specifically, Officer Eddie Schaub testified that he observed a juvenile walking on Coleman Street behind the 14th Street Snack shop drinking from an open can of bear. The juvenile was arrested and informed the officer that "he had been inside the 'club,' indicating the front of the 14th Street Snack Shop." (Eddie Schaub Aff. at ¶¶ 2, 3.) Officer Sholar stated that he also observed two underage individuals walking behind the business who appeared intoxicated with red, bloodshot eyes and slurred speech. Both individuals were arrested for alcohol intoxication. (Sholar Aff. at ¶ 3.)

At the time the officers entered the business, the door was unlocked and no one was at the

---

[1] In fact, the record reflects that the party was supposed to last four hours; but once the teenagers began arguing and/or fighting on the dance floor, the chaperones of the party ended the party early. (Curtis Dillard Dep. at 5-7.)

door. (L. Watkins Dep. at 12, 18; Curtis Dillard Aff. at ¶ 7.) Chaperone Leandre Watkins testified that he was outside when he observed the first officer entering the building and told him, "[Y]ou're not supposed to go in there, that's a private party." (L. Watkins Dep. at 12.) Watkins testified that the officer "turned around and looked at me and said this is an open place of business, I can go where I want, and opened the door and went in." (Id.) Plaintiff testified that the police were already coming through the door when he first observed them inside the building. (Herbert Manning Dep. at 50.) The renter, Glynetta Watkins, testified that she was not present when the officers entered the building, because she was outside looking for a child that was supposed to have been inside. (G. Watkins Dep. at 29-30.) Garnett Poole, employee of Plaintiff, testified that he was outside at the time of the police entry into the business and did not see the officers enter the building. (Garnett Poole Dep. at 27-28.) Chaperone Curtis Dillard testified that the chaperones locked the door after everyone left; however, he didn't know how the front door got open. Dillard stated that "I think somebody else went out and left the door open. The next thing you know, we was greeted by the police coming in." (Dillard Dep. at 7.) Officer Jack Lingenfelter stated that he entered the building along with other officers and did not "recall anyone posted or working at the door to the business at the time, and nobody tried to stop [him] from entering the building." (Jack Lingenfelter Aff. at ¶ 3.)

Once inside the building, the officers conducted a visual search of the premises. According to Plaintiff, the officers searched the entire premises without the Plaintiff's consent to search. After the initial visual search of the premises, the officers began to search areas that Plaintiff testified were off limits to the renter of the premises. Plaintiff asserts that he had placed two large speakers at the entrance of the bar area prior to the party. (Manning Dep. at 38; Poole Dep. at 10.) The bar area

4

contained a large, locked cabinet with a curtain in front of the cabinet. Law enforcement moved the large speakers and the curtain and then instructed Plaintiff to open the locked cabinet. Plaintiff claims that he was informed by Sergeant Mayes that if he did not open the locket cabinet, the police officers would break the lock. Plaintiff further represents that he objected repeatedly to the search and was told by Defendant that his objections didn't make any difference because they were going to search anyway.

Sergeant Mayes stated that he observed what he believed was suspicious activity surrounding the curtained-off bar area. (Mayes' Interrogatory Response No. 7.)[2] Despite Plaintiff's objection to this portion of the search, Mayes stated that he proceeded without consent with the dual purpose of conducting the criminal investigation and enforcing the entertainment ordinance. Specifically, in response to Plaintiff's Interrogatories, Mayes states in relevant part: "[W]e were conducting a criminal investigation and it was important to determine if any perpetrator, victim or evidence existed inside the plaintiff's place of business, and in addition the administrative ordinance authorized a search of any part of the premises." (Mayes's Response to Plaintiff's Interrogatory No. 6.) In the locked cabinet, the officers found thirty-eight unopened pints of liquor, approximately four cases of beer, and one-half gallon of liquor. (Uniform Citation.) The officers cited the Plaintiff for a violation of City of Hopkinsville Local Ordinance § 118.12 due to disorderly patrons and a violation of KRS § 243.020 for unlicensed storage of alcohol. On October 8, 2009, the Christian County District Court dismissed all charges against the Plaintiff.

---

[2]Specifically, Mayes stated that "[w]hile visually inspecting the business premises as part of the criminal investigation, I observed an adult male pushing speakers with a cooler on top of the speakers toward the direction of the bar area. It appeared to me that the adult male did not want the investigating police officers to inspect this area. The area was inspected as part of the on-going criminal investigation as well as the administrative inspection." Id.

As a result of the alleged illegal search, Plaintiff filed a complaint against Scott Mayes, Guy Howie, and Daniel J. Kemp, in their individual and official capacities, pursuant to 42 U.S.C. § 1983 alleging that Defendants violated his right to be free from unlawful searches as set forth in the Fourth Amendment to the United States Constitution and applied to the states through the Fourteenth Amendment. On July 19, 2010, the Court dismissed the claims against Guy Howie and Daniel J. Kemp, in their individual capacities, and any punitive damages claims against the City of Hopkinsville pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim. [DN 15]. The § 1983 claim for a violation of Plaintiff's Fourth Amendment rights against Scott Mayes in his individual and official capacities remained. On March 25, 2011, Plaintiff filed a motion for leave to amend to file an additional claim against the City of Hopkinsville challenging the facial constitutionality of Hopkinsville Local Ordinance § 118.13. The Magistrate Judge denied the motion as untimely. The parties have now filed cross-motions for summary judgment.

### III. DISCUSSION

Plaintiff claims that the Defendant's warrantless entry into his place of business amounted to an unreasonable search in violation of the Fourth Amendment. Defendant argues that no constitutional violation occurred because exigent circumstances justified the warrantless entry and search of the Plaintiff's building, including the bar area, and that regardless of the constitutionality of City of Hopkinsville Local Ordinance § 118.13,[3] the individual Defendants are entitled to

---

[3]City of Hopkinsville Local Ordinance § 118.13 specifically provides:
§ 118.13 INSPECTION OF PREMISES ON REGULAR BASIS; RIGHT OF ENTRY
(A)   The Chief of Police or his or her officers shall visit places of entertainment on a regular basis. Upon their observing any violation, they shall make arrests without warrants for violations committed within their presence.
(B)   It shall be unlawful to refuse to grant admittance to the premises for which

qualified immunity for the warrantless search since the officers were acting in accordance with the Ordinance in question.

### A. Section 1983 and Qualified Immunity Standards

Section 1983 imposes civil liability on a person acting under color of state law who deprives another of the "rights, privileges, or immunities secured by the Constitution and laws." 42 U.S.C. § 1983. "Section 1983 creates no substantive rights, but merely provides remedies for deprivations of rights established elsewhere." DeSilva v. State Medical Bd. of Ohio, 2010 WL 1644209, *7 (S.D. Ohio. April 23, 2010)(citing City of Oklahoma City v. Tuttle, 471 U.S. 808 (1985)). Section 1983 has two basic requirements: "(1) state action that (2) deprived an individual of federal statutory or constitutional rights." Id. (citing Flint v. Kentucky Dept. of Corrections, 270 F.3d 340, 351 (6th Cir. 2001)).

"Under the doctrine of qualified immunity, 'government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" Miller v. Sanilac County, 606 F.3d 240, 247 (6th Cir. 2010)(quoting Phillips v. Roane County, Tenn., 534 F.3d 531, 538 (6th Cir. 2008)(quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)). To demonstrate that Defendant Mayes is not entitled to qualified immunity, Plaintiff must prove that a constitutional right was violated and that the right was clearly established at the time

---

a license has been issued, at any time, upon verbal request of any law enforcement official, health officers or the Alcoholic Beverage Control Officer of the Commonwealth of Kentucky, for the purpose of making an inspection of the premises or any part thereof.

(Id. at § 118.13.)


of the violation, i.e., that a reasonable officer confronted with the same situation would have known that a warrantless search of Plaintiff's business would violate the Plaintiff's right.  Scott v. Harris, 550 U.S. 372, 377 (2007); Pearson v. Callahan, 555 U.S. 223 (2009); Brosseau v. Haugen, 543 U.S. 194, 199-200 (2004); Harrison v. Ash, 539 F.3d 510, 517 (6th Cir. 2008); Jones v. Byrnes, 585 F.3d 971, 975 (6th Cir. 2009).  See Hope v. Pelzer, 536 U.S. 730, 739 (2002) ("[Q]ualified immunity operates to ensure that before they are subjected to suit, officers are on notice their conduct is unlawful." (internal quotation marks omitted)).

### B. Fourth Amendment and Exigent Circumstances

The Fourth Amendment provides that "[t]he right of the people to be secure in their person, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. Const. Amend. IV. Under the Fourth Amendment, searches "'conducted without a warrant issued upon probable cause [are] per se unreasonable . . . subject only to a few specifically established and well-delineated exceptions.'" DeSilva, 2010 WL 1644209, *8 (quoting U.S. v. Moon, 513 F.3d 527, 537 (6th Cir. 2008), Schneckloth v. Bustamonte, 412 U.S. 218, 219 (1973)).  Thus, "[a]bsent a warrant, consent, or other exigent circumstances, law enforcement officers act unreasonably and thus unconstitutionally when they enter a commercial property to conduct a search for contraband or evidence of a crime." Club Retro, L.L.C. v. Hilton, 568 F.3d 181, 195 (5th Cir. 2009)(citing Donovan v. Dewey, 452 U.S. 594, 598 n. 6 (1981)).

The Sixth Circuit has found exigent circumstances to exist where, for example, (1) "'officers were in hot pursuit of a fleeing suspect'; (2) 'the suspect represented an immediate threat to the

8

arresting officers and public'; or (3) 'immediate police action was necessary to prevent the destruction of vital evidence or thwart the escape of known criminals.'" Walters v. Stafford, 317 Fed. Appx. 479, 489 (6th Cir. 2009)(quoting Causey v. City of Bay City, 442 F.3d 524, 529 (6th Cir. 2006)). "If 'the exigencies of the situation make the needs of law enforcement so compelling that the warrantless search is objectively reasonable under the Fourth Amendment,' then the warrant requirement may be excused." Modrell v. Hayden, 636 F. Supp. 2d 545, 552 (W.D. Ky. 2009)(quoting Brigham City, Utah v. Stuart, 547 U.S. 398, 403 (2006)). "An action is 'reasonable' under the Fourth Amendment, regardless of the individual officer's state of mind, 'as long as the circumstances, viewed *objectively*, justify the action.'" Id. (quoting Brigham City, 547 U.S. at 404). See also Ewolski v. City of Brunswick, 287 F.3d 492, 501 (6th Cir. 2002). Whether exigent circumstances exist is generally an issue for a jury. Walters, 317 Fed. Appx. at 489 (citing Hancock v. Dodson, 958 F.2d 1367, 1375 (6th Cir.1992)). But if "'the underlying facts are essentially undisputed, and where a finder of fact could reach but one conclusion as to the existence of exigent circumstances, the issue may be decided by the trial court as a matter of law.'" Id.

     Based on the information the police had at they time they arrived at the business, exigent circumstances existed permitting the officers to enter and search the business without a warrant due to an immediate threat of harm to themselves and others. The police were responding to a "shots fired" dispatch, reports of fighting on or around the business premises, and observations of several intoxicated underage individuals. Specifically, the record reflects that (1) the officers received a call that shots had been fired on the premises in question; (2) upon arriving at the business, officers observed 100 to 150 people in the middle of and blocking Walnut Street immediately in front of the business; (3) the officers observed three fights that required police intervention; (4) the officers

arrested two to three underage individuals for public intoxication, one of which admitted that he had been inside the "club;" (5) the officers had not located the suspect or firearm in question; and (6) at the time of the search, bystanders were still located in the rental area and outside of the business.

The officers, including Sergeant Mayes, had an "objectively reasonable basis for believing" that the circumstances posed an immediate threat of harm either to themselves or others given the large number of people, including minors, in and around the business premises. Schreiber v. Moe, 596 F.3d 323, 331 (6th Cir. 2010). Furthermore, it was reasonable for the officers to conclude that one or more of the teenagers at the party had both a weapon and a willingness to use it given the reports of shots fired on or about the business premises. The Supreme Court has long recognized that "[t]he need to protect or preserve life or avoid serious injury" is an exigent circumstance justifying searches or seizures that would otherwise be unconstitutional without a warrant. Mincey v. Arizona, 437 U.S. 385, 392 (1978) (internal quotation marks and citation omitted); U.S. v. Williams, 354 F.3d 497, 505 (6th Cir. Dec. 29, 2003). Dickerson v. McClellan, 101 F.3d 1151, 1159–60 (6th Cir.1996); Causey, 442 F.3d at 530–31 (exigency where officers knew that shots had been fired in a backyard on New Years Eve and that a 911 hangup call had come from the residence earlier, even though residents told officers through the window that no one was injured); United States v. Ponder, 240 Fed. Appx. 17, 20 (6th Cir. 2007). See also Warden, Md. Penitentiary v. Hayden, 387 U.S. 294, 298–299 (1967). Thus, the police were justified to enter and search the business for suspects, victims, "and any weapon that might be used either against them or against other people in the [business]" without first obtaining a search warrant. United States v. Harris, 158 Fed. Appx. 719, 724 (6th Cir. 2005)(quoting United States v. Bass, 315 F.3d 561, 564 (6th Cir. 2002)).

The exigent circumstances that justified the officers' warrantless entry into the business continued to exist when the officer searched the bar area and the cabinet. Both the bar area and the cabinet were areas in which a suspect, victim, or weapon could be located. In fact, a review of the pictures submitted by Plaintiff reveals that the cabinet in question was large enough to hold at least one individual. Having found the warrantless search of the bar area and cabinet justified by exigent circumstances, the Court also concludes that no warrant was required to seize the alcohol discovered in the cabinet in the curtained-off bar area. United States v. Huffman, 461 F.3d 777, 785-86 (6th Cir. 2006). In lawfully searching the bar area, Defendant Mayes discovered the alcohol in plain view. Furthermore, the incriminating nature of the alcohol was readily apparent to the officers given that the Plaintiff's business did not have a liquor license. See U.S. v. Taylor, 248 F.3d 506, 512 (6th Cir. 2001) (citing Horton v. California, 496 U.S. 128, 136 (1990)). "[L]aw enforcement agents may seize items in plain view, so long as the agent is lawfully present, the discovery is inadvertent, and the incriminating nature of the item is 'immediately apparent.'" United States v. Blair, 214 F.3d 690, 698 (6th Cir. 2000)(internal quotation marks and citations omitted); United States v. Williams, 289 Fed. Appx. 868, 871 (6th Cir. 2008). Thus, the Court finds that the warrantless seizure of the alcohol did not violate the Fourth Amendment.

For the reasons set forth, the Court concludes that no reasonable jury could find that Defendant Mayes violated the Fourth Amendment either by entering and searching Plaintiff's business, including the bar area, or by seizing the unlicensed alcohol.

### C. Official-Capacity Claim

Plaintiff also brought § 1983 claim against Mayes in his official capacity. A § 1983 claim against a local government official in his or her official capacity is actually a claim against the local

government itself. Matthews v. Jones, 35 F.3d 1046, 1049 (6th Cir.1994); Will v. Michigan Dept. of State Police, 491 U.S. 58, 68 (1989)). Therefore, the Court will treat the official capacity claim as a claim against the City of Hopkinsville. To determine whether a municipality is liable for a § 1983 violation, the Court must analyze two distinct issues: "(1) whether plaintiff's harm was caused by a constitutional violation, and (2) if so, whether the city is responsible for that violation." Collins v. City of Harker Heights, Tex., 503 U.S. 115, 120 (1992) (citation omitted). Plaintiff's claim against the City of Hopkinsville fails because, as discussed above, Plaintiff has failed to show an underlying constitutional violation. Unless there is an underlying constitutional deprivation, a municipality cannot be liable. See Claybrook v. Birchwell, 199 F.3d 350, 361 (6th Cir. 2000); City of Los Angeles v. Heller, 475 U.S. 796, 799 (1986). Accordingly, summary judgment in favor of the City of Hopkinsville is appropriate.

### IV.  CONCLUSION

For the reasons set forth above, **IT IS HEREBY ORDERED** that the motion by Plaintiff, Herbert Manning, *pro se*, for summary judgment [DN 48] is **DENIED** and the motion by Defendant, Scott Mayes, in his individual and official capacities, for summary judgment [DN 49] is **GRANTED**. A Judgment will be entered consistent with this Opinion.


cc: Herbert Manning, *pro se*
    counsel of record